# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN CORTEZ,**<br>　　Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-857** |
| **CITY OF MORGAN CITY, ET AL.,**<br>　　Defendants | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants Sergeant Gary Keller, Sergeant James Mikeska, and the City of Morgan City.[1] Plaintiff Stephen Cortez opposes the motion.[2] Defendants have filed a reply.[3] For the reasons that follow, the motion for summary judgment is **GRANTED**.

## BACKGROUND[4]

On June 29, 2016, Plaintiff Stephen Cortez was arrested for driving while impaired, reckless operation of a motor vehicle, and improper lane usage and booked into the City of Morgan City Jail.[5] Because Plaintiff was unable to post his $62,000 bond, he remained in police custody from the date of his arrest until his release on July 8, 2016.[6] After six days in custody, on July 5, 2016, Plaintiff was alone in his cell[7] when he pointed a plastic spoon at Patrick Augmann, a fellow inmate and jail trustee who was cleaning the cell block

---

[1] R. Doc. 26.
[2] R. Doc. 36.
[3] R. Doc. 37.
[4] The factual background is derived from Plaintiff's Complaint, R. Doc. 1; the parties' statements of material fact, R. Docs. 26-10, 35; and video surveillance footage of the incident, R. Doc. 26-11 (manual attachment). The Court construes all facts in the light most favorable to Plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[5] R. Doc. 1 at ¶ IV.
[6] *Id.* at ¶ VII.
[7] There is a factual dispute with respect to the size of the cell, but it is not material to the Court's decision. See R. Doc. 26-10 at ¶ 3 (alleging the cell is 8x8 feet) and R. Doc. 35 (alleging the cell is 10x10 feet).

1

where Plaintiff was housed.[8] As Trustee Augmann approached Plaintiff, Plaintiff began using vulgar language and threatening to kill Trustee Augmann.[9] As Trustee Augmann attempted to calm Plaintiff, Plaintiff "began breaking the phone in his cell and attempting to eat pieces of [it]."[10] After attempting to convince Plaintiff to stop breaking the phone, Trustee Augmann left the block and reported the issue to Sergeant Keller.[11] Sergeant Keller consulted with Sergeant Mikeska and Officer Phillip Dural, and the three officers went to Plaintiff's cell to assess the situation.[12]

When Officer Dural and Sergeants Keller and Mikeska arrived, Plaintiff pointed the plastic spoon at the officers, threatening to kill them and yelling profanity.[13] The officers attempted to disarm Plaintiff with verbal commands,[14] but Plaintiff continued to use profanity and "began growling like a dog."[15] "Due to Plaintiffs [*sic*] behavior, the officers intended to disarm Plaintiff, remove him from his cell and put him in the padded cell for the safety of himself, inmates, and staff members."[16]

When verbal commands failed, Officer Dural pointed a pepper gun at Plaintiff, ordering him to drop the spoon and back away from the cell bars.[17] The officers decided

---

[8] Trustee Augmann and the Defendants refer to the object held by the Plaintiff as a shiv or a shank, commonly understood to be a makeshift weapon made out of a commonplace object.
[9] R. Doc. 26-10 at ¶ 5 (alleging Plaintiff pointed a "shiv" at Trustee Augmann); R. Doc. 35 (denying Plaintiff pointed a shiv at Trustee Augmann); R. Doc. 26-11 (showing Plaintiff pointed an object at Trustee Augmann). The video does not clearly answer the question of whether the object was a shiv, as Defendants contend, or a plastic spoon, as Plaintiff contends. For purposes of this motion, because the facts are construed in the manner most favorable to the Plaintiff, the Court assumes the object was actually a plastic spoon. *Saucier*, 533 U.S. at 201.
[10] R. Doc. 26-10 at ¶ 9; R. Doc. 35 at ¶ 9.
[11] R. Doc. 26-10 at ¶ 12; R. Doc. 35 at ¶ 12.
[12] R. Doc. 26-10 at ¶ 13; R. Doc. 35 at ¶ 13.
[13] The R. Doc. 26-10 at ¶ 14 (describing the object as a "shiv"); R. Doc. 35 at ¶ 13 (disputing whether the object was a shiv, contending it was a plastic spoon).
[14] R. Doc. 26-10 at ¶ 16; R. Doc. 35 at ¶ 16.
[15] R. Doc. 26-10 at ¶ 17; R. Doc. 35 at ¶ 17.
[16] R. Doc. 26-10 at ¶ 18; R. Doc. 35 at ¶ 18.
[17] R. Doc. 26-10 at ¶ 19; R. Doc. 35 at ¶ 19.

not to use the pepper gun, fearing it might contaminate the entire cell block,[18] and it was determined that "[o]ther techniques could not be utilized to obtain compliance including a taser due to the amount of metal in the cell including bed frames, sink and toilet on which [Plaintiff] could have injured his head."[19]

After considering their options, the officers decided to use "soft hand techniques" to disarm Plaintiff and entered his cell.[20] Once in the cell, Sergeant Mikeska attempted to take the spoon from Plaintiff, at which time Plaintiff moved his hand away and lunged at Sergeant Mikeska with the spoon.[21] Believing Sergeant Mikeska was in imminent danger, Sergeant Keller punched Plaintiff in the face to prevent what he believed was deadly force,[22] while Sergeant Mikeska "grabbed [Plaintiff's] other hand to try to bring him to the ground."[23] "[T]he blow . . . caused [Plaintiff] to relax enough such that [he] released the [spoon]."[24] Once Plaintiff released the spoon, the officers attempted to place Plaintiff's

---

[18] R. Doc. 26-10 at ¶ 20; R. Doc. 35 at ¶ 20. The Court notes Plaintiff disputes whether Sergeants Keller and Mikeska were "qualified to give an opinion" on whether they could safely use the pepper gun, as "only Phillip Dural was certified with the pepper ball gun." R. Doc. 35 at ¶ 20. Plaintiff does not dispute that the officers did not use the gun, nor does Plaintiff dispute that the officers were concerned about using the pepper gun out of fear of cross-contamination. *Id.*
[19] R. Doc. 26-10 at ¶ 21; R. Doc. 35 at ¶ 21.
[20] R. Doc. 26-10 at ¶ 22; R. Doc. 35 at ¶ 22.
[21] Plaintiff disputes whether he struck Sergeant Mikeska in the chest, pointing to Sergeant Keller's deposition testimony, page 30, lines 2–8. This testimony does not support Plaintiff's contention, as this testimony relates only to the initial charge filed against the Plaintiff. *See* R. Doc. 26-4 30:2–8. Later in Sergeant Keller's deposition, he testifies that he, Officer Dural, and Sergeant Mikeska planned on going "in and just disarm[ing] [Plaintiff]. We were going to use soft hand techniques. That wasn't going to be an issue ***until he lunged at Sergeant Mikeska with the shank***. And at that time I felt it was imminent danger or life-threatening if he hit [Sergeant] Mikeska in the chest with the shank." *Id.* at 37:1–6 (emphasis added).
[22] R. Doc. 26-10 at ¶ 26; R. Doc. 35 at ¶ 26. Plaintiff alleges Sergeant Keller punched him in the face while Sergeant Mikeska held him; however, Plaintiff cites no evidence to substantiate this assertion, so the Court does not consider this fact genuinely disputed. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence.") (citing Celotex, 477 U.S. at 324)); *see also id.* ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992))).
[23] R. Doc. 26-2 at 30:3–9.
[24] R. Doc. 26-10 at ¶ 27 (describing the object as a shiv); R. Doc. 35 at ¶ 27 (disputing whether the object was a shiv).

hands behind his back.[25] Plaintiff struggled with the officers and attempted to bite Sergeant Mikeska.[26] Plaintiff did not comply with verbal commands to stop resisting,[27] and once handcuffed he refused to walk to the padded cell.[28]

After the officers placed Plaintiff in a padded cell, they noticed a cut on Plaintiff's nose and attempted to clean the wound,[29] but Plaintiff "keep pulling his head away, refusing to allow the officers to clean [it]."[30] After eventually cleaning the wound, the officers left Plaintiff in the padded cell and placed him on medical observation.[31] Plaintiff remained in the padded cell under medical observation for three days, until July 8, 2016, when it was determined Plaintiff's mental state was not improving, and he was brought to Teche Regional Medical Center.[32] Once the hospital personnel advised Sergeant Mikeska that Plaintiff would be admitted for a psychiatric evaluation, Sergeant Mikeska requested Judge Kim Stansbury reduce Plaintiff's bond and release him on his own recognizance, which request Judge Stansbury granted.[33] Plaintiff's medical records indicate he was admitted for observation due to his altered mental state, secondary to acute alcohol withdrawal, and a healing laceration around the bridge of his nose.[34]

---

[25] R. Doc. 26-10 at ¶ 28–30; R. Doc. 35 at ¶ 28–30.
[26] R. Doc. 26-10 at ¶ 31; R. Doc. 35 at ¶ 31.
[27] R. Doc. 26-10 at ¶ 32; R. Doc. 35 at ¶ 32.
[28] R. Doc. 26-10 at ¶ 36 (stating he refused to walk and was "flailing his legs"); R. Doc. 35 at ¶ 36 (disputing whether Plaintiff's legs were flailing).
[29] R. Doc. 26-10 at ¶ 37; R. Doc. 35 at ¶ 37.
[30] R. Doc. 26-10 at ¶ 38; R. Doc. 35 at ¶ 38.
[31] R. Doc. 26-10 at ¶ 42; R. Doc. 35 at ¶ 42.
[32] R. Doc. 26-10 at ¶ 60; R. Doc. 35 at ¶ 60.
[33] R. Doc. 26-10 at ¶¶ 62, 63; R. Doc. 35 at ¶¶ 62, 63.
[34] R. Doc. 26-10 at ¶ 66 (citing R. Doc. 26-8 at 19); R. Doc. 35 at ¶ 66. Plaintiff disputes this fact, citing to his medical records. A review of the records reveals, however, confirms the accuracy of Defendants' assertion. The medical records describe the injury as "a scratch on his nose with some erythema." R. Doc. 26-8 at 19. As a result, the Court does not consider this fact to be genuinely disputed. *See Ragas*, 136 F.3d at 458.

Plaintiff alleges he has no memory from July 5, 2016 through July 10, 2016 when he became aware he was in the intensive care ward of Teche Regional Medical Center.[35]

Based on these events, Plaintiff brings four claims against Defendants:

(1) A Fourteenth Amendment claim for excessive force, pursuant to 42 U.S.C. § 1983, against Sergeants Mikeska and Keller in their personal capacities;
(2) A Fourteenth Amendment claim for deliberate indifference to his severe medical needs, pursuant to 42 U.S.C. § 1983, against Sergeants Mikeska and Keller in their personal capacities;
(3) A *Monell* claim,[36] pursuant to 42 U.S.C. § 1983, against the City of Morgan City for failure to train; and
(4) A *Monell* claim, pursuant to 42 U.S.C. § 1983, against the City of Morgan City, alleging the City has a policy of releasing inmates from custody before bringing them to the hospital for treatment.

On August 6, 2018, Defendants filed the instant motion, asserting a qualified immunity defense and seeking judgment as a matter of law on Plaintiffs' claims against them.[37] Plaintiff filed his opposition on August 29, 2018.[38] Defendants filed a reply on September 12, 2018.[39]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] "An issue is material if its resolution could affect the outcome of the action."[41] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing

---

[35] *Id.* at ¶ VIII.
[36] *Monell v. New York City Dept. of Social Servs*, 436 U.S. 658 (1978).
[37] R. Doc. 26.
[38] R. Doc. 32. Plaintiff's opposition, although timely, was deficient. R. Doc. 34. Plaintiff filed an amended opposition on September 10, 2018. R. Docs. 35, 36. It is this version of Plaintiffs' opposition the Court considers.
[39] R. Doc. 37.
[40] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[41] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

5

the evidence."[42] All reasonable inferences are drawn in favor of the non-moving party.[43] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[44]

Government officials may assert a qualified immunity defense in a Rule 56 motion for summary judgment. Once a defendant asserts qualified immunity as a defense, the plaintiff bears the burden of demonstrating the defendant is not entitled to its protections.[45] The qualified immunity defense serves to shield government officials, sued in their individual capacities and performing discretionary functions, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46] "A court required to rule upon the qualified immunity issue must [first] consider" whether, taken in the light most favorable to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right."[47] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[48] If the complaint makes out a constitutional violation, the Court then must determine whether that constitutional right was clearly established at the time the violation occurred.[49] To be "clearly established" for the purpose of qualified immunity,

---

[42] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[43] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[44] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[45] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).
[46] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).
[47] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
[48] *Id.*
[49] *Id.*

"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[50]

Qualified immunity attaches when an official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[51] For a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"[52] "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[53] "Officials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be put on notice that their conduct is unlawful.'"[54] "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"[55] "The court's focus, for purposes of the 'clearly established' analysis should be on 'fair warning': qualified immunity is unavailable 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[56]

## LAW AND ANALYSIS

In resolving questions of qualified immunity at the summary judgment stage, courts engage in a two-part inquiry.[57] The threshold issue is whether, "[t]aken in the light most favorable to the party asserting the injury . . . the officer's conduct violated a

---

[50] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[51] *White v. Pauly*, 137 S. Ct. 548, 549 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)).
[52] *Id.*
[53] *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Anderson*, 483 U.S. at 640).
[54] *Id.* at 393 (quoting *Kinney*, 367 F.3d at 350).
[55] *White*, 137 S. Ct. at 549.
[56] *Wernecke*, 591 F.3d at 392 (5th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).
[57] *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

[constitutional] right."[58] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[59] Plaintiff brings two § 1983 claims against Sergeants Mikeska and Keller in their personal capacities, as well as two *Monell* claims against the City of Morgan City. The Court analyzes each in turn. Ultimately, the Court concludes Defendants are entitled to qualified immunity and grants judgment in their favor.

### I. Plaintiff's Fourth Amendment Claim

Plaintiff first alleges Sergeants Mikeska and Keller violated his constitutional right to be free from excessive force when Sergeant Keller struck Plaintiff in the face, rather than using a less violent means of restraining him. According to Plaintiff, the officers should have used the pepper gun, as "[t]his option would have eliminated the need for hard hand strike to [his] head."[60] Defendants seek summary judgment on this claim, arguing their actions were objectively reasonable.

When a plaintiff alleges excessive force while awaiting trial in police custody, the federal right at issue arises from the Due Process Clause of the Fourteenth Amendment.[61] "[W]hen a court is called upon to examine the amount of force used on a pretrial detainee[] for the purpose of institutional security, the appropriate analysis is . . . 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'"[62] In judging the reasonableness of an officer's actions, a court must consider: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort

---

[58] *Saucier*, 533 U.S. at 201.
[59] *Id.*
[60] R. Doc. 36 at 4.
[61] *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993).
[62] *Id.* at 1446 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[63]

Whether an officer's use of force was objectively reasonable turns on the facts and circumstances of each particular case.[64] "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."[65] A court must also defer to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security" and consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained."[66] Only if the Court determines the officers' conduct violated the Fourteenth Amendment must it then consider whether "the right in question was 'clearly established' at the time of the violation."[67]

In this case, it is undisputed that Plaintiff was behaving erratically and threatened to stab and kill a fellow inmate,[68] and began breaking things in his cell.[69] Although it is disputed whether Plaintiff was holding a plastic spoon or a shiv, it is undisputed that once the officer Defendants arrived, Plaintiff began to threatening to stab the officers with the object.[70] It is undisputed that Defendants attempted to disarm Plaintiff using verbal

---

[63] *Id.* (citing *Graham*, 490 U.S. at 396).
[64] *Kingsley v. Hendrick*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).
[65] *Id.*
[66] *Bell v. Wolfish*, 441 U.S. 520, 540 (1979).
[67] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).
[68] R. Doc. 26-10 at ¶ 17; R. Doc. 35 at ¶ 17.
[69] R. Doc. 26-10 at ¶ 9; R. Doc. 35 at ¶ 9.
[70] R. Doc. 26-10 at ¶ 14 (describing the object as a "shiv"); R. Doc. 35 at ¶ 13 (disputing whether the object was a shiv, contending it was a plastic spoon).

9

commands,[71] and that when verbal commands did not work, the officers threatened to use a pepper gun.[72] It is undisputed that, because Plaintiff did not comply with the officers' commands using these techniques, and it was determined other techniques would pose a danger to Plaintiff,[73] the officers decided to enter Plaintiff's cell in order to disarm him.[74] When the officers entered Plaintiff's cell, it is undisputed Plaintiff lunged at Sergeant Mikeska.[75] In response to this, Sergeant Keller punched Plaintiff in the face, and Plaintiff dropped the object he was holding.

Based on the facts that are not in dispute, the Court finds Sergeants Mikeska and Keller's actions were objectively reasonable. The amount of force Sergeant Keller used to prevent Plaintiff from striking Sergeant Mikeska in the chest was minimal. He struck the Plaintiff only once and with his hand. According to Plaintiff's medical records, the Plaintiff sustained only a superficial injury to the bridge of his nose as a result of Sergeant Keller's actions. The officers attempted less intrusive means of gaining Plaintiff's compliance before resorting to physical force. Even assuming that in reality Plaintiff had only a plastic spoon, without the benefit of 20/20 hindsight, a reasonable officer could have believed Plaintiff was brandishing a shiv; thus, Sergeant Keller reasonably perceived Plaintiff posed a significant threat to Sergeant Mikeska and responded accordingly.[76] Based on the record before the Court, Defendants' use of force "was applied in a good faith effort to maintain or restore discipline."[77] In light of these circumstances, Defendants are entitled

---

[71] R. Doc. 26-10 at ¶ 16; R. Doc. 35 at ¶ 16.
[72] R. Doc. 26-10 at ¶ 19; R. Doc. 35 at ¶ 19.
[73] R. Doc. 26-10 at ¶ 21; R. Doc. 35 at ¶ 21.
[74] R. Doc. 26-10 at ¶ 22; R. Doc. 35 at ¶ 22.
[75] Plaintiff disputes whether he struck Sergeant Mikeska in the chest. See Note 21.
[76] *Id.* (citing *Graham*, 490 U.S. at 396).
[77] *Valencia*, 981 F.2d at 1445.

to qualified immunity. As a result, the Court grants Defendants summary judgment on this claim.

## II. Plaintiffs' Fourteenth Amendment Claim

Plaintiff next contends Defendants acted with deliberate indifference when they confined him in a padded cell for three days before taking him to the hospital.[78] Defendants argue they are entitled to summary judgment on this claim, as "the evidence in this matter clearly establishes the officers were not deliberately indifferent to [Plaintiff's] medical treatment and when, in their opinion, he needed medical attention, [Plaintiff] was brought to the hospital."[79] The Court agrees.

It is well-settled that "a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights."[80] To demonstrate deliberate indifference, a plaintiff must present evidence: "(1) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn, (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the [defendant] subjectively intended that harm occur."[81] Deliberate indifference cannot be inferred merely from a negligent, or even a grossly negligent response to a substantial risk of serious harm.[82] "Deliberate indifference is an extremely high standard to meet."[83]

---

[78] R. Doc. 36 at 3.
[79] R. Doc. 26-1 at 23.
[80] *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (quoting *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996)).
[81] *Tamez v. Manthey*, 589 F.3d 764, 770, (5th Cir. 2009).
[82] *Estate of Allison v. Wansley*, 524 F. App'x 963, 970 (5th Cir. 2013) (citing *Hare v. City of Corinth*, 74 F.3d 633, 645, 649–50 (5th Cir.1996) (en banc) (citations omitted)).
[83] *Id.* (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

In this case, Plaintiff has failed to offer any evidence to substantiate his claim of deliberate indifference. In opposition to Defendants' assertion that they are entitled to qualified immunity, Plaintiff merely states, "The facts indicate that from 5JUL16 through 8JUL16 [Plaintiff] was kept in the padded cell without any medical evaluation."[84] It is undisputed, however, that while Plaintiff was in the padded cell, he was under medical observation.[85] Moreover, Plaintiff does not dispute that, once the jail staff determined Plaintiff's condition was not improving, Sergeant Mikeska took Plaintiff to the hospital.[86] Even assuming the officers should have known sooner than three days that Plaintiff required more significant medical treatment, "the failure to alleviate a significant risk that [the officer] should have perceived, but did not[,] is insufficient to show deliberate indifference."[87] As a result, the Court concludes Plaintiff has failed to carry his summary judgment burden of demonstrating Defendants are not entitled to qualified immunity and grants summary judgment in favor of Defendants as to this claim.

### III.  Plaintiff's *Monell* Claims

Plaintiff brings two *Monell* claims against the City of Morgan City; one for an alleged failure to properly train its officers and one alleging the City has a pattern or practice of discharging detainees once they are admitted into the hospital to avoid paying for the detainees' medical costs.

With respect to the first *Monell* claim, that the City has failed to properly train its officers, Plaintiff does not identify any area of Sergeants Mikeska and Keller's training he contends was insufficient or improper, nor has he offered any argument addressing how

---

[84] R. Doc.
[85] R. Doc. 26-10 at ¶ 42; R. Doc. 35 at ¶ 42.
[86] R. Doc. 26-10 at ¶ 60; R. Doc. 35 at ¶ 60.
[87] *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted).

12

such alleged inadequate training represents a City policy, how the City was deliberately indifferent, or how this alleged policy was the moving force behind his alleged injury. With respect to Plaintiff's second *Monell* claim, Plaintiff does not allege the City has a policy of not providing inmates with medical care; rather, he alleges the City has a policy of releasing inmates from custody to avoid paying for medical care. Neither in his complaint, nor on summary judgment, has Plaintiff alleged how such alleged custom/policy is in violation of any constitutional right.

Municipal liability under § 1983 has three elements: (1) a policy maker, (2) an official policy, and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom."[88] Having found no underlying constitutional violation in this case, the Court dismisses Plaintiff's *Monell* claim. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have authorized the [alleged violation] is quite beside the point."[89]

## CONCLUSION

**IT IS ORDERED** that the motion for summary judgment filed by Defendants Sergeant Gary Keller, Sergeant James Mikeska, and the City of Morgan City be and hereby is **GRANTED**.[90]

**IT IS FURTHER ORDERED** that there be judgment in favor of Defendants and against Plaintiff Stephen Cortez.

**New Orleans, Louisiana, this 24th day of September, 2018.**

                                                     *[signature: Susie Morgan]*
                                                 **SUSIE MORGAN**
                              **UNITED STATES DISTRICT JUDGE**

---

[88] *Piotrowski v. City of Houst.*, 237 F.3d 567, 578 (5th Cir. 2001).
[89] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).
[90] R. Doc. 26.